UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOAN WAHLER,

                Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

**DECISION AND ORDER**

1:19-CV-00549 EAW

## INTRODUCTION

Represented by counsel, plaintiff Joan Wahler ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 13; Dkt. 15), and Plaintiff's reply (Dkt. 18). For the reasons discussed below, the Commissioner's motion (Dkt. 15) is granted and Plaintiff's motion (Dkt. 13) is denied.

## BACKGROUND

Plaintiff protectively filed her application for DIB on July 21, 2015. (Dkt. 5 at 14, 96).[1] In her application, Plaintiff alleged disability beginning December 9, 2011, due to back injury, uncontrolled type 2 diabetes, neuropathy in hands and feet, glaucoma, a torn rotator cuff in both shoulders, anxiety, and stenosis. (*Id.* at 14, 96-97). Plaintiff's application was initially denied on September 30, 2015. (*Id.* at 14, 106). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Bryce Baird in Buffalo, New York, on January 30, 2018. (*Id.* at 14, 47-95). At the hearing, Plaintiff's counsel amended the alleged onset date to March 4, 2014. (*Id.* at 53). On May 15, 2018, the ALJ issued an unfavorable decision. (*Id.* at 11-28). Plaintiff requested Appeals Council review; her request was denied on February 26, 2019, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10). This action followed.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is

---

[1]   When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.     Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 404.1520(c).  If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

**I.     The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520.  Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2016.  (Dkt. 5 at 16).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity from her amended alleged onset date of March 3, 2014, through her date last insured of December 31, 2016.  (*Id.* at 17).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: obesity, degenerative disc disease of the lumbar spine, diabetes with lower extremity neuropathy, carpal tunnel syndrome with history of left-side carpal tunnel release, left should impingement, and glaucoma.  (*Id.*).  The ALJ also found that Plaintiff suffered from the non-severe impairment of diabetic retinopathy.  (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id.*).  The ALJ particularly considered the criteria of Listings 1.02, 1.04, and 11.14 in reaching his conclusion.  (*Id*. at 17-18).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the additional limitations that Plaintiff can:

> lift and carry 20 pounds occasionally and 10 pounds frequently.  She can sit for up to 6 hours in an 8-hour day and can stand or walk for up to 4 hours in an 8-hour day.  She can never operate foot controls bilaterally.  She can occasionally climb ramps or stair but can never climb ladders, ropes, or

>scaffolds. She can occasionally balance, stoop, kneel, and crouch but can never crawl. She can frequently reach, overhead reach, handle, and finger bilaterally. She can never face exposure to excessive vibration or to hazards, such as unprotected heights or moving machinery. She could not perform a job requiring driving a vehicle at night.

(*Id.* at 18). At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as an office clerk. (*Id.* at 22).

The ALJ also made a step five determination in the alternative, relying on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of parking lot attendant, children's attendant, furniture renter, file clerk, and general clerk. (*Id.* at 23-24). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 24).

## II. **The Commissioner's Determination Is Supported by Substantial Evidence and Free from Reversible Error**

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing: (1) the ALJ failed to explain his finding at step three of the sequential analysis that Plaintiff's impairment of degenerative disc disease did not meet the requirements of Listing 1.04A, and (2) the ALJ failed to properly evaluate the medical opinion evidence of record when making his RFC determination. The Court has considered these arguments and, for the reasons discussed below, finds them to be without merit.

### A. **The ALJ's Step Three Finding Is Free from Reversible Error**

"Plaintiff has the burden of proof at step three to show that her impairments meet or medically equal a Listing." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y.

2009), *adopted*, 614 F. Supp. 2d 252 (N.D.N.Y. 2009). "To match an impairment in the Listings, the claimant's impairment must meet all of the specified medical criteria of a listing." *Loescher v. Berryhill*, No. 16-CV-300-FPG, 2017 WL 1433338, at *3 (W.D.N.Y. Apr. 24, 2017) (internal quotation and citation omitted). "If a claimant's impairment manifests only some of those criteria, no matter how severely, such impairment does not qualify." *Rockwood*, 614 F. Supp. 2d at 272 (internal quotations and citations omitted).

An ALJ is required to provide an explanation "as to why the claimant failed to meet or equal the Listings, '[w]here the claimant's symptoms as described by the medical evidence appear to match those described in the Listings.'" *Rockwood*, 614 F. Supp. 2d at 273 (alteration in original) (quoting *Kuleszo v. Barnhart*, 232 F. Supp. 2d 44, 52 (W.D.N.Y. 2002)). "[I]t is the ALJ's responsibility . . . to build an accurate and logical bridge from the evidence to [his or her] conclusion to enable a meaningful review," and "[t]he Court cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." *Loescher*, 2017 WL 1433338, at *3 (internal quotations and citations omitted) (second alteration in original). However, "[a]n ALJ's unexplained conclusion [at step three] of the analysis may be upheld where other portions of the decision and other 'clearly credible evidence' demonstrate that the conclusion is supported by substantial evidence." *Ryan v. Astrue*, 5 F. Supp. 3d 493, 507 (S.D.N.Y. 2014) (citation omitted).

Plaintiff argues that the ALJ failed to analyze the factors under Listing 1.04A, and instead recited the requirements of the Listing without applying the evidence to those requirements. (Dkt. 13-1 at 24). Plaintiff also contends that the evidence of record shows

that her lumbar disc injury meets all the requirements of Listing 1.04A, particularly the consultative opinion rendered by Dr. Hongbiao Liu to which the ALJ gave great weight (*Id.* at 25-26; *see* Dkt. 5 at 22).

Social Security regulations provide the following with regard to the requirements of Listing 1.04A:

> Listing 1.04(A) requires—in addition to a spinal disorder such as a herniated disc, arthritis, degenerative disc disease, or a vertebral fracture—"[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."

*Scully v. Berryhill*, 282 F. Supp. 3d 628, 635 (S.D.N.Y. 2017) (citing Listing 1.04A). The SSA "has provided further guidance regarding the assessment of Listing 1.04(A) in the form of an Acquiescence Ruling ('AR') issued in 2015." *Monsoori v. Comm'r of Soc. Sec.*, No. 1:17-CV-01161-MAT, 2019 WL 2361486, at *4 (W.D.N.Y. June 4, 2019); *see* SSAR 15-1(4), 80 Fed. Reg. 57418-02 (2015). Although ARs are guidance documents that do not carry the full force of law, the Supreme Court has held that an agency's interpretation of its own regulations is entitled to substantial deference. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2419 (2019) ("[T]he Congress delegating regulatory authority to an agency intends as well to give that agency considerable latitude to construe its ambiguous rules."); *Auer v. Robbins*, 519 U.S. 452, 462-63 (1997).

In AR 15-1(4), the SSA specifies "that for a disorder of the spine to meet listing 1.04A at step three in the sequential evaluation process, the claimant must establish the simultaneous presence of all the medical criteria in paragraph A." 80 Fed. Reg. at 57420.

After these criteria are established, "the claimant must also show that this level of severity continued, or is expected to continue, for a continuous period of at least 12 months." *Id.* In other words, "when the listing criteria are scattered over time, wax and wane, or are present on one examination but absent on another, the individual's nerve root compression would not rise to the level of severity required by listing 1.04A." *Id.* The Court follows other courts in this District and finds that the SSA's finding in AR 15-1(4) is entitled to substantial deference. *See Ramirez Morales v. Berryhill*, No. 6:17-CV-06836-MAT, 2019 WL 1076088, at *4 (W.D.N.Y. Mar. 7, 2019) ("While the Court notes that the AR was issued in response to the Fourth Circuit's holding in *Radford v. Colvin*, 734 F.3d 288 (4th Cir. 2013), that plaintiff could meet Listing 1.04(A) even though his relevant symptoms were not always simultaneously present, the Second Circuit has not made a similar holding. Accordingly, this Court will accord the policy position set forth in AR 15-1(4) substantial deference."); *see also Atkins v. Colvin*, No. 15-1168-JWL, 2016 WL 2989393, at *10-12 (D. Kan. May 24, 2016) (applying the policy position set forth in AR 15-1(4) rather than the Fourth's Circuit's holding in *Radford*); *Smith v. Colvin*, No. 2:15-CV-00107-AA, 2016 WL 8711697, at *3-4 (D. Or. Feb. 5, 2016) (according substantial deference to AR 15-1(4)).

The Court has reviewed the medical record and the written determination, and finds that the ALJ's determination that Plaintiff did not meet or medically equal the listing requirements for Listing 1.04A was supported by substantial evidence. The ALJ found that Listing 1.04 was "not met or medically equaled because there is no evidence of nerve root compression with the required characterizations." (Dkt. 5 at 18). The evidence of

record does not show that Plaintiff experienced all the criteria in Listing 1.04A for a continuous period of at least 12 months—specifically, Plaintiff has not shown that she experienced nerve root compression or had positive results for a straight leg test for a 12-month period.

Plaintiff argues that she had a positive straight leg test during Dr. Liu's examination on September 28, 2015 (*see* Dkt. 5 at 362), and that in addition to being a requirement of the listing, a positive straight leg test is sufficient to show nerve root compromise for purposes of Listing 1.04A (Dkt. 13-1 at 25-26 & n.13). However, even if a positive straight leg test was sufficient to show nerve root compromise, every other straight leg test of record, including one performed just two weeks after Dr. Liu's examination, was negative. (*See id.* at 453, 477, 480, 483, 485-86, 489, 491, 503, 527, 529). Moreover, Plaintiff herself conceded at her hearing that she did not meet the requirements of any listing, including Listing 1.04A. (Dkt. 5 at 54). Accordingly, the Court finds the ALJ's determination that Plaintiff's degenerative disc disease of the lumbar spine did not meet Listing 1.04A was supported by substantial evidence. *See Beall v. Colvin*, No. 5:16-CV-92, 2017 WL 1155809, at *4 (N.D.N.Y. Mar. 27, 2017) (finding substantial evidence supported ALJ's determination that Plaintiff did not meet or medically equal Listing 1.04 where "sensory exams and straight leg tests were largely normal"); *Bushey v. Colvin*, No. 8:13-CV-0777 GTS, 2014 WL 4854984, at *5 (N.D.N.Y. Sept. 30, 2014), *aff'd*, 607 F. App'x 114 (2d Cir. 2015) (holding "the record does not support a conclusion that Plaintiff meets Listing

1.04A" where there were two tests with negative results within approximately one year of the plaintiff's diagnosis with radiculopathy).

Plaintiff argues that "the ALJ did not set forth any rationale or analysis of the elements of Listing 1.04(A)." (Dkt. 13-1 at 27).  The Court acknowledges that "the ALJ's evaluation of the Listing could have been more thorough," but as discussed above finds that "the evidence nonetheless establishes that [Plaintiff]'s impairment does not meet the Listing, and remand is not required."  *Kretovic v. Colvin*, No. 13-CV-6257P, 2015 WL 1297875, at *23 (W.D.N.Y. Mar. 24, 2015); *see Mallon v. Comm'r of Soc. Sec.*, No. 18-CV-0712MWP, 2020 WL 263654, at *2 (W.D.N.Y. Jan. 17, 2020) (finding "any error at step three was harmless" because the plaintiff did not identify "record evidence demonstrating that he meets all elements of Listing 1.04, and indeed the record does not contain such evidence").

Plaintiff also argues that Dr. Liu's exam, which the ALJ gave great weight to, documents all the elements of Listing 1.04A.  (Dkt. 13-1 at 26).  However, as discussed above, "when the listing criteria are scattered over time, wax and wane, or are present on one examination but absent on another, the individual's nerve root compression [does] not rise to the level of severity required by listing 1.04A," 80 Fed. Reg. at 57420, and every other straight leg test in the record, including one within two weeks of Dr. Liu's examination, had negative results.[2]  The presence of one positive straight leg test, even one

---

[2]   Plaintiff argues that there is no explicit 12-month duration requirement in Listing 1.04A, but does not acknowledge AR 15-1(4).  (*See* Dkt. 18 at 6).

in an opinion that was accorded great weight by the ALJ, does not nullify the requirement that the listing criteria be present for at least 12 months.

Plaintiff also argues that even if her impairments do not meet Listing 1.04A, the case must still be remanded to determine if her lumbar spine injury medically equals the Listing. She contends that the absence of a straight leg test could be supplemented with the December 4, 2015, EMG and nerve conduction studies of Plaintiff's lower extremities. (Dkt. 18 at 6-7; *see* Dkt. 5 at 508). However, even if these tests were considered, the evidence of record would still not support a finding that Plaintiff's impairments medically equaled Listing 1.04A. SSA regulations provide that to be medically equivalent to a listing, the impairment must be "at least equal in severity *and duration* to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a) (emphasis added). The EMG and nerve conduction studies were done a little over two months after Dr. Liu's examination (*see* Dkt. 5 at 362, 508), and, as discussed repeatedly above, the duration requirement for Listing 1.04A is that an impairment must last at least 12 months. Accordingly, the record does not support that Plaintiff's impairments medically equaled Listing 1.04A, and there was no reversible error in the ALJ's step three determination.

**B.     The ALJ Properly Evaluated the Medical Opinions of Record**

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's

RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted).  "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation omitted).  In this case, the ALJ considered the opinions of consultative examiner Dr. Liu and physical therapist Elizabeth Stom ("PT Stom") when assessing Plaintiff's RFC.  (Dkt. 5 at 22).  In particular, the ALJ gave great weight to Dr. Liu's opinion, and little weight to the opinion of PT Stom. (*Id.*).

In assessing a disability claim, an ALJ must consider and weigh the various medical opinions of record.  Pursuant to the Commissioner's regulations:

> the ALJ must consider various factors in deciding how much weight to give to any medical opinion in the record, regardless of its source, including: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the . . . physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Pike v. Colvin*, No. 14-CV-159-JTC, 2015 WL 1280484, at *5 (W.D.N.Y. Mar. 20, 2015) (quotation and alterations omitted).

Plaintiff contends that the ALJ erred in giving little weight to the opinion of PT Stom in forming the RFC.  (Dkt. 13-1 at 27-31).  As a threshold matter, because physical therapists are not acceptable medical sources pursuant to SSA regulations, their opinions are not entitled to any particular weight under the regulations.  *See Brush v. Berryhill*, 294 F. Supp. 3d 241, 257 (S.D.N.Y. 2018) ("Because a physical therapist is not an acceptable medical source, this opinion is not due controlling weight.").  Nonetheless, and as with all

- 13 -

the medical opinions of record, the ALJ was required to consider PT Stom's opinion in the context of the record as a whole.

PT Stom completed a functional capacity evaluation on June 26, 2014.  (Dkt. 5 at 454-57).  PT Stom noted that Plaintiff could walk for six minutes with an antalgic gait, could lift and carry five pounds, and occasionally walk, stand, sit, push, pull, work overhead, climb stairs, rotate her trunk repetitively, and balance on uneven surfaces.  (*Id.* at 455).  She further stated that Plaintiff could frequently balance on even surfaces but could not work while stooped over, and could not repetitively manipulate objects, push and pull, or perform foot and ankle movements.  (*Id.* at 456-57).  PT Stom ultimately opined that Plaintiff did not have the full capacity to perform medium work.  (*Id.* at 457).

The ALJ considered PT Stom's opinion and afforded it little weight.  (*Id.* at 22).  The ALJ first noted that PT Stom was not an acceptable medical source under the regulations or a treating provider.  (*Id.*).  Next, the ALJ noted that PT Stom's opinion was inconsistent with Dr. Liu's, and that Dr. Liu is an acceptable medical source whose opinion is more consistent with the overall record.  (*Id.*).  The ALJ further discussed that Plaintiff was noted by PT Stom to have an antalgic gait, severe neuropathy of the hands, and poor vision due to glaucoma, all of which were generally inconsistent with the Plaintiff's "often noted normal gait during treatment, unremarkable endocrinology visit examinations, and generally mild eye doctor examination findings."  (*Id.*).  These discrepancies, the ALJ found, "call[ed] into question [Plaintiff]'s subjective presentation at this evaluation."  (*Id.*).

Plaintiff argues that it was improper for the ALJ to assign little weight to PT Stom's opinion based on her not being an acceptable medical source or treating provider.  (Dkt.

13-1 at 29; Dkt. 18 at 8-9). It is true that an ALJ may not disregard opinion evidence from a physical therapist or "other source" solely because it was not authored by an acceptable medical source or because of the absence of a treating relationship. *See Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010) (holding that ALJ erred in disregarding opinion of social worker simply because it was the opinion of an "other source," and "not on account of its content or whether it conformed with the other evidence in the record"). However, in this case the ALJ did not discount PT Stom's opinion solely because she was a non-treating provider who is not an acceptable medical source; those were only some of the factors discussed by the ALJ as reasons for giving PT Stom's opinion little weight. The ALJ also took into account the fact that PT Stom was a specialist by recognizing that she was a Master's-level physical therapist, and discussed how her opinion was inconsistent with the record evidence. (Dkt. 5 at 22). It was not error for the ALJ to consider the absence of a treating relationship between PT Stom or the fact that she is not an acceptable medical source alongside the other factors discussed, and consideration of those facts is in fact required by the regulations. *See* 20 C.F.R. § 404.1527(c).

Plaintiff also contends that the ALJ was incorrect in finding that PT Stom's opinion was inconsistent with Dr. Liu's opinion and the medical record. (Dkt. 13-1 at 29-30; Dkt. 18 at 9-10). It is within the ALJ's discretion to resolve genuine conflicts in the evidence, *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002), and, in doing so, to "choose between properly submitted medical opinions," *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). The Court has reviewed PT Stom's opinion and Dr. Liu's opinion and finds the ALJ's characterization is supported by substantial evidence. PT Stom reported that Plaintiff could

only lift 5 pounds and occasionally sit, stand, walk, bend, and use her arms (Dkt. 5 at 455-56), whereas Dr. Liu found that Plaintiff had normal muscle strength, range of motion, and motor function in her neck, shoulders, elbows, forearms, wrists, hands, hips, knees, and ankles, as well as could walk and stand normally with mild to moderate limitations in prolonged walking, bending, and kneeling (*id.* at 361-63).  Moreover, to the extent the two opinions conflicted, it was within the ALJ's discretion to resolve the conflict.  *See Martes v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 750, 760 (S.D.N.Y. 2018) ("It is within an ALJ's discretion to resolve 'genuine conflicts in the medical evidence.'" (quoting *Veino*, 312 F.3d at 588)).

       The Court has also reviewed the objective medical evidence of record, and finds the ALJ's conclusion that Dr. Liu's opinion is more consistent with the overall record is also supported by substantial evidence.  The ALJ found that Dr. Liu's opinion was generally consistent with the record because the record documents Plaintiff's pain, joint disorders, and degenerative disc disease along with a noted lack of distress, normal gait, strength, and range of extremity motion, as well as improved conditions with medication or surgery. (Dkt. 5 at 22).  The record shows that on May 26, 2016, Nurse Practitioner Kathy Kurtz observed Plaintiff walked with a normal gait, stood normally, had normal muscle strength in her arms and legs, and had normal neurological function.  (*Id.* at 410). The record also shows that Dr. Jack Cukierman, M.D. observed that Plaintiff did not have a gait disturbance at appointments in August 2015 and November 2015.  (*Id.* at 594, 583-85).  Additionally, the treatment notes of Dr. Tahir Qazi, M.D. state that Plaintiff's back pain significantly improved with medication and treatment (*id.* at 528), and that throughout the end of 2015

and 2016 Plaintiff consistently walked with an antalgic but "borderline stable" gait and had functional muscle strength throughout her body (*id.* at 476-77, 479-80, 485-86, 488-89, 491, 501, 503, 529).  Moreover, Plaintiff's range of motion in her extremities was consistently found to be normal.  (*Id.* at 362-63, 414-15, 425, 443).

Plaintiff also disputes the ALJ's finding that other evidence in the record called into question Plaintiff's subjective presentation of her orthopedic impairments at PT Stom's evaluation.  (Dkt. 13-1 at 30).  Plaintiff argues it is improper to discredit the orthopedic opinions in PT Stom's evaluation when the medical evidence that conflicted with her opinion was regarding her hand neuropathy and poor vision.  (*Id.*).  However, the ALJ also discussed that PT Stom noted Plaintiff had an antalgic gait, which was inconsistent with Plaintiff's "often noted normal gait during treatment" as detailed above.  (Dkt. 5 at 22).  In other words, the ALJ also found that the orthopedic evidence of record conflicted with PT Stom's evaluation.  Accordingly, the Court finds that the ALJ's decision to afford PT Stom's opinion little weight was supported by substantial evidence.  *See Dumas v. Comm'r of Soc. Sec.*, No. 04-CV-4625 (SLT), 2008 WL 4104685, at *4 (E.D.N.Y. Sept. 4, 2008) (holding the ALJ did not err in refusing to give great weight to opinions that were "largely inconsistent with a substantial portion of plaintiff's medical records").

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 15) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 13) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: June 29, 2020
       Rochester, New York